UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RITA S. BERENS,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

Case No.  1:15-CV-762

HON. ROBERT HOLMES BELL

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner).  Plaintiff Rita Berens seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act.

## STANDARD OF REVIEW

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 55 years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.54, 167.) She received a high school education, and was previously employed as a material handler, gluer, and packager. (PageID.74, 81.) Plaintiff filed for benefits on January 30, 2010, alleging that she had been disabled since June 20, 2008, due to diabetes, anxiety, stress, high blood pressure, and pain in her legs, stomach, and hands. (PageID.166.) Plaintiff's application was denied on September 14, 2010, after which time she requested a hearing before an ALJ. (PageID.206–209, 212–214.) On January 27, 2012, Plaintiff appeared with her counsel before ALJ James Prothro for an administrative hearing. (PageID.120–163.) On May 11, 2012, ALJ Prothro

entered a decision finding Plaintiff was not disabled. (PageID.179–200.) On September 14, 2013, however, the Appeals Council remanded the ALJ's decision for further factual findings. (PageID.200–204.) On February 3, 2014, Plaintiff appeared at a second hearing before ALJ Prothro with testimony being offered by Plaintiff, a vocational expert (VE), and a medical expert (ME). (PageID.62–116.) In a partially favorable decision dated March 14, 2014, the ALJ determined that Plaintiff was not disabled prior to March 6, 2014, but became disabled on that date and continued to be disabled through the date of the decision. (PageID.38–61.) On July 2, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.24–29.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. § 404.1520(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. § 404.1520(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 404.1545.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

In the decision at issue here, ALJ Prothro determined that prior to March 6, 2014, Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (PageID.41.) At step two, the ALJ determined Plaintiff had the following severe impairments: (1) diabetes mellitus (DM) with numbness in her bilateral lower extremity (BLE) below her knees (diabetic neuropathy); (2) status-post right distal fibular fracture; (3) right knee injury (chondromalacia patella); (4) bowel resection and lyses of adhesions; (5) history of hernia wall repair; (6) obesity; and (7) bilateral carpal tunnel syndrome with history of associated surgery in 1994 and 1996. (PageID.41.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.43–44.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform a reduced range of light work as defined in 20 CFR 404.1567(b). The claimant can lift up to 15 pounds occasionally and 10 pounds frequently. In an 8-hour workday, the claimant can stand and walk for 4 hours and sit for 6 hours. The claimant can frequently bend and can occasionally kneel and crawl. The claimant can use her upper extremities frequently. A sit-stand option is required at intervals of about 30 minutes. The claimant can occasionally climb stairs, but cannot climb ladders and scaffolds.

(PageID.44.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of her past relevant work. (PageID.52.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given her limitations. *See Richardson*, 735 F.2d at 964. The VE testified that Plaintiff could perform the following work: machine tender (7,800 jobs in Michigan), counter clerk (7,200 jobs in Michigan), and line attendant (4,800 jobs in Michigan). (PageID.110–112.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.54.) The ALJ went on to note, however, that beginning on March 6, 2014, Plaintiff's age category changed and after considering Plaintiff's age, education, work experience, and RFC, entered a finding of disabled, beginning on that date, under Rule 202.06 of the medical-vocational guidelines. (PageID.54.)

The ALJ accordingly concluded that Plaintiff was not disabled prior to March 6, 2014, but became disabled on that date and continued to be so through the date of the decision. (PageID.54.)

## DISCUSSION

### 1. The ALJ Properly Evaluated Plaintiff's Impairments.

Plaintiff's first claim of error is not a model of clarity. It appears she argues the ALJ erred because he should have found that her depression was a severe impairment. (PageID.891–894.) Plaintiff also appears to claim the ALJ erred by failing to consider her depression when he evaluated her RFC. (PageID.891–894.) At step two of the sequential disability analysis articulated above, the ALJ must determine whether the claimant suffers from a severe impairment. A severe impairment is defined as "any impairment or combination of impairments

which significantly limits your physical or mental ability to do basic work activities," 20 C.F.R. § 404.1520(c), and which lasts or can be expected to last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The severity standard is used as an "administrative convenience to screen out claims that are totally groundless solely from a medical standpoint." *Higgs v. Bowen*, 880 F.2d 860, 862–63 (6th Cir. 1988). Upon determining that a claimant has one severe impairment, the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as severe does not constitute reversible error, because the ALJ can consider such non-severe conditions in determining the claimant's RFC. *Id.* Here, the ALJ found several severe impairments and continued through the sequential analysis. The ALJ also determined that Plaintiff's depression and anxiety were not severe impairments. (PageID.42.) Even if the ALJ had improperly classified Plaintiff's mental impairments as "not severe," this classification is not an error requiring reversal. *See Maziarz*, 837 F.2d at 244.

The more difficult issue for the Court is whether the ALJ properly considered Plaintiff's non-severe mental impairments in evaluating her RFC. RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of her medically determinable impairments. *See* 20 C.F.R. § 404.1545. RFC is the most, not the least, a claimant can do despite her impairments. 20 C.F.R. § 404.1545(a)(1); *Branon v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 677 n.3 (6th Cir. 2013); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007). "Once one severe impairment is found, the combined effect of all impairments must be considered, even if other impairments would

not be severe." *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 787, (6th Cir. 2009) (while the ALJ did not err in determining that the alleged mental impairment was not severe, the ALJ did err when he gave no explanation for totally discounting the objective evidence of the claimant's mental impairment in determining the RFC).

At step two, the ALJ considered the opinion by an agency psychologist, Dr. William Schirado, who found Plaintiff's mental impairments were not severe. (PageID.42.) Plaintiff argues that it was improper for the ALJ to rely on Dr. Schirado's opinion. First, Plaintiff argues Dr. Schirado had not reviewed the entire record, and specifically could not have considered that Plaintiff had later been assigned a GAF score of 45 by Dr. Mazhar Munir.[2] (PageID.892.) "When an ALJ relies on a non-examining source who did not have the opportunity to review later submitted medical evidence, especially when that evidence reflects ongoing treatment," the Sixth Circuit requires "some indication that the ALJ at least considered these [new] facts before giving greater weight to an opinion that is not based on a review of a complete case record." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013). Here the ALJ noted he had considered all of the evidence, and specifically that Dr. Schirado's assessment was consistent with the record as a whole. (PageID.51.) The Court finds the ALJ gave a sufficient indication here such that he did not err in considering the opinion. Moreover, to the extent that Plaintiff argues she is disabled because of this lower GAF score, she is mistaken. As the Sixth Circuit has explained, "according to the DSM's explanation of the GAF scale, a score may have little or no bearing on the subject's social and occupational functioning." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006).

---

[2]The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994) (hereinafter DSM-IV). A score of 45 indicates that the individual is experiencing "serious symptoms or any serious impairment in social, occupational, or school functioning." *Id.* at 34.

"[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place." *Id.*

Plaintiff also argues the ALJ could not rely on Dr. Schirado's opinion because the doctor improperly characterized the opinion of Dr. Robert Griffith. According to Plaintiff, Dr. Schirado relied on Dr. Griffith's opinion but found only mild limitations when Dr. Griffith found moderate limitations, and argues the ALJ did not resolve this inconsistency. Specifically, Plaintiff argues Dr. Schirado improperly stated Dr. Griffith found Plaintiff's depression was in partial remission and failed to note that Dr. Griffith had assigned a GAF score of 52.[3] (PageID.893.) The Court finds no error here. Dr. Griffith indeed did diagnosis Plaintiff with "Major Depression, in partial remission." (PageID.715.) And contrary to Plaintiff's assertion, Dr. Schirado expressly noted Dr. Griffith assigned a GAF of 52. (PageID.171.) To the extent there was an inconsistency between the two opinions, the ALJ resolved it by noting that Dr. Schirado did not rely solely on Dr. Griffith's opinion, but also "considered the statements submitted by 3rd parties, namely the claimant's daughter, which indicate a much greater degree of retained mental capacity." (PageID.51.) This statement is supported by substantial evidnece. Plaintiff's daughter reported that Plaintiff took care of a dog and birds. (PageID.364.) She had no problem with personal care, though she needed help or reminders with medication. (PageID.365.) She could prepare simple meals, do laundry, and the dishes. (PageID.365.) While Plaintiff did not go out with others, her daughter indicated there were no changes in her social activities since her alleged disability began. (PageID.368.) She further stated that Plaintiff was able to pay attention for a "long time." She could finish what she started, and could follow written and spoken instructions. (PageID.368.) She got

---

[3] A score of 52 indicates moderate symptoms or any moderate difficulty in social, occupational, or school functioning. DSM–IV at 34.

along with authority figures, and could handle stress and changes in routine. (PageID.369.) The ALJ did not err in characterizing these statements as indicating a greater degree of mental capacity than that found by Dr. Griffith. With that in mind, the Court finds no error and accordingly, Plaintiff's first claim of error is rejected.

### 2.     The ALJ Properly Discounted Plaintiff's Subjective Allegations

Plaintiff testified at the administrative hearing that she was impaired to an extent far beyond that recognized by the ALJ. The ALJ, however, discounted Plaintiff's subjective allegations on the ground that Plaintiff was not credible. (PageID.46.) Plaintiff argues the ALJ improperly discounted her subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 F. App'x at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987).

In support of her argument that the ALJ was required to grant her application for benefits based on her subjective allegations, Plaintiff argues that the ALJ's analysis is flawed because he merely identified a "lack of corroboration" for Plaintiff's allegations rather than a direct "contradiction" thereof. (PageID.896.) Plaintiff identifies no authority supporting her interpretation of the relevant authority. Plaintiff's argument is likewise contrary to the controlling authority identified above.

Plaintiff's subjective allegations, to the extent such are inconsistent with her RFC, enjoy little support in the record. It is true that Plaintiff often complained of chest pain and high

blood pressure, but the record demonstrates those complaints were not borne out by objective testing. For example an April 2, 2010, stress echocardiogram returned normal results and was "technically adequate." (PageID.650.) Similarly a cardiac catheterization found "[n]ormal leftventricular systolic function" and "[n]ormal epicardial coronary arteries." (PageID.667.) When Plaintiff sought treatment, her blood pressure normalized under her home medications. (PageID.699.) The ALJ did not err in noting her complaints were inconsistent with objective testing and conservative treatment. Similarly, the ALJ noted that Plaintiff's complaints of lower extremity pain and numbness due to her diabetes were not supported by negative testing, and her statement in 2013 that her foot pain had begun only months earlier after a pedicure. (PageID.761, 768, 841.) Contrary to Plaintiff's assertion, the ALJ did not "play doctor" in noting this inconsistency. In sum, the ALJ's decision to accord limited weight to Plaintiff's subjective allegations is supported by substantial evidence.

### 3.     The ALJ Properly Considered Dr. Hillelson's Medical Opinion.

On March 15, 2012, Plaintiff met with Dr. June D. Hillelson, DO. The record contains an evaluation by Dr. Hillelson that summarizes Plaintiff's medical history as well as the results of a physical examination she conducted. (PageID.735–740.) Dr. Hillelson also completed a Medical Source Statement (MSS) regarding Plaintiff's ability to do physical activities. (PageID.741–746.) Dr. Hillelson completed her evaluation by stating that Plaintiff "might avoid fine motor activities, repetitive hand movements including repetitive gripping and repetitive grasping." (PageID.738–739.) Dr. Hillelson also recommended Plaintiff lose weight, follow a diabetic diet, and monitor her salt intake. (PageID.739.) On the MSS, Dr. Hillelson opined that Plaintiff could only occasionally lift and carry up to twenty pound weights. (PageID.741.) She

could only stand and walk for thirty minutes at any one time, and while she could sit for eight hours total in a workday, she could only stand for two hours total and walk for two hours total in the workday. (PageID.742.) Plaintiff could only occasionally use her hands for reaching overhead, as well as use them for handling, fingering, feeling, pushing, and pulling. (PageID.743.) The ALJ assigned only "some weight" to the doctor's opinion, noting specifically that her opinion regarding Plaintiff's manipulative limitations was due only "limited weight." (PageID.50.) Plaintiff argues the ALJ erred in assigning greater weight to Dr. Ronald Kendrick (the ME who testified at the hearing) and Dr. Manmohan Kamboj, (the state agency reviewing physician) because they had not examined Plaintiff. (PageID.902–903.) The Court disagrees.

The issue that Plaintiff raises on appeal does not involve the treating physician rule. The treating physician rule did not apply to the opinions expressed by Dr. Hillelson because she was a consultative examiner who only examined Plaintiff on one occasion, not a treating physician. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *see also Louden v. Comm'r of Soc. Sec.*, 507 F. App'x 497, 498 (6th Cir. 2012); *Kornecky,* 167 F. App'x at 506. The rule also did not apply to the non-examining medical experts because they had no treatment relationship with Plaintiff. Accordingly, the ALJ was not "under any special obligation to defer to [those] opinion[s] or to explain why [s]he elected not to defer to [them]." *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 744 (6th Cir. 2011); *see Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014). Nonetheless, the ALJ carefully considered the opinion expressed by Dr. Hillelson and found that it was not persuasive in light of the record as a whole.

Plaintiff is correct that "[a]s a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an

examination." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013). But it is by no means as rigid a rule as Plaintiff apparently would prefer. Rather, an examining relationship is only one of the factors an ALJ is to consider when weighing medical opinions. *See* 20 C.F.R. § 404.1527(c); *see also McClean v. Colvin*, No. 3:11–cv–236, 2013 WL 4507807, at *8 (M.D. Tenn. Aug. 23, 2013) ("[R]espective examining and non-examining status [is] only one of several relevant factors [.]"); *Brooks*, 531 F. App'x at 642 ("[I]n appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources."). Consistency is another important factor: "Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." 20 C.F.R. § 404.1527(c)(4). In addition, "Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are 'highly qualified' and are 'experts in Social Security disability evaluation.'" *Cobb v. Comm'r of Soc. Sec.*, No. 1:12–cv–2219, 2013 WL 5467172, at *5 (N.D. Ohio Sept. 30, 2013) (quoting 20 C.F.R. §§ 404.1527(e)(2) (i), 416.927(e)(2)(i)); *see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

The ALJ is responsible for weighing conflicting medical opinions. *See Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001); *see also Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ."). Here, the ALJ acknowledged the examining relationship, or lack thereof, of all the physicians and found that Dr. Hillelson's opinion was not consistent with the record evidence. The ALJ accordingly properly evaluated the medical opinions

under 20 C.F.R. § 404.1527(c). Plaintiff nonetheless argues that the ALJ improperly found Dr. Hillelson's opinion was consistent with the record. Specifically, Plaintiff argues the ALJ erred by noting that Plaintiff did not require treatment for her carpal tunnel syndrome since 1996 and "played doctor" in evaluating objective tests. (PageID.903–905.) The Court is not persuaded.

Plaintiff claims that the ALJ found "no upper extremity problems" (PageID.903.) That is demonstrably not the case. Indeed, the ALJ found that Plaintiff suffered from the severe impairment of bilateral carpal tunnel syndrome at step two and imposed a limitation of only frequent use of her upper extremities. (PageID.41, 44.) Dr. Hillelson noted that Plaintiff was last treated for her carpal tunnel syndrome in 1996. Plaintiff does not challenge that assertion, but instead notes that objective tests document continued impairments. But Plaintiff's burden on appeal is much higher than citing evidence on which the ALJ could have found a greater level of restriction. She must show that the ALJ's factual finding is not supported by substantial evidence. *See Jones*, 336 F.3d at 477. Plaintiff has not done so here. While the Court does not doubt Plaintiff has difficulties with the use of her upper extremities, the fact remains that she has not sought treatment for her carpal tunnel syndrome since 1996. Nor has Plaintiff shown the ALJ played doctor by noting that some objective tests revealed negative results even though others were positive. As noted above, it is the ALJ's duty to weigh the evidence and resolve conflicts in the record. *Workman*, 105 F. App'x at 801 (citing *Walters*, 127 F.3d at 531). The ALJ did just that here.

Finally, Plaintiff argues that it was incorrect for the ALJ to state that Dr. Hillelson's opinions were based on Plaintiff's subjective statements, noting that Dr. Hillelson also provided the diagnosis of carpal tunnel syndrome. (PageID.904.) But even if the ALJ erred here, the Court has already found that the ALJ's decision to assign only limited weight to the opinion is supported by

more than substantial evidence. Accordingly, any such error is harmless. *See NLRB v. Wyman–Gordon*, 394 U.S. 759, 766 n.6 (1969) (plurality opinion) (where "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game").

For all the above reasons, Plaintiff's last claim of error is rejected.

## CONCLUSION

For the reasons articulated herein, the Commissioner's decision will be **AFFIRMED.** A separate judgment shall issue.


Dated: August 3, 2016                                /s/ Robert Holmes Bell
                                                    ROBERT HOLMES BELL
                                                    UNITED STATES DISTRICT JUDGE